UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAXIMANO SILVA,<br> Plaintiff,<br><br>v.<br><br>TOWN OF HUDSON, POLICE CHIEF<br>BRAGA, "DOE," SHIFT SUPERVISOR,<br>and, DETECTIVE CHARLES T. DEVLIN,<br> Defendants. | )<br>)<br>)<br>)  Civil Action No. 10cv10038 -NG<br>)<br>)<br>)<br>)<br>) |

GERTNER, D.J.

# MEMORANDUM AND ORDER
June 24, 2011

  Maximano Silva ("Silva"), a federal prison inmate, filed a self-prepared § 1983 action in which he challenges the validity of several searches of his home in May of 2010 – three warrantless entries, and one search pursuant to a warrant. As a result of the evidence gathered during the warrant search, Silva was charged with various counts of identity fraud in the United States District Court for the District of Massachusetts. While the Court agreed that one of the warrantless searches was unlawful,[1] and provided part of the information on which a warrant search was based, under the "independent source" doctrine, the Court concluded that there was sufficient evidence to establish probable cause.

  Silva was convicted of all charges. Defendants move to dismiss, claiming that Silva's § 1983 challenge was time-barred because he waited until after the First Circuit affirmed his conviction before bringing this case, rather than suing immediately after the search or at the very least, after the search was declared illegal. I **GRANT** the motion.

---

[1] It is not clear whether Silva is challenging all of the searches, warrantless and warrant searches, or only the one that the district court found to have violated the Fourth Amendment.

## I. FACTS

Silva's brother Norman Silva ("Norman") received traffic citations that he believed were attributable to Silva. Norman checked Silva's bedroom and found traffic tickets and medical bills in Norman's name, as well as a driver's license and phone bill in neither Norman's nor Silva's name ("the first search"). Norman reported his findings to the Town of Hudson police. Detective Charles T. Devlin ("Devlin") asked him to bring in the items he had discovered the next time they met. Devlin later testified that he thought Norman had already taken the items from the bedroom when they first met.

In contrast, Silva claims (in the memorandum attached to his pro se complaint) that Norman contacted Detective Devlin *after* he received the citation but *before* he entered Silva's room for the fist search. Devlin was interested in Norman's allegations precisely because Silva was already under investigation for suspected identify theft in connection with other victims. United States v. Silva, 502 F. Supp. 2d 143, 145 (D. Mass. 2007).

After talking to Devlin, Norman reentered Silva's bedroom and took the citation and medical bills that were in Norman's name ("the second search"). When Norman brought these items to the police, Devlin instructed him to go back into Silva's bedroom and take the documents that were in other peoples' names, including the driver's license and telephone bill.

Norman searched Silva's bedroom as requested ("the third search"). Devlin then copied the documents, gave them back to Norman for replanting in the bedroom, and used the documents to obtain a search warrant that was executed on May 31, 2000. Forged prescriptions were found during the course of the search, leading to the federal prosecution.

The government charged Silva with conspiracy to obtain and obtaining controlled substances by fraud, health care fraud, identity theft, and aggravated identity theft. After Silva filed a motion to suppress, the court held that although the third search violated the plaintiff's Fourth Amendment rights, the fruits of the warrant search were not subject to suppression under the "independent source" doctrine. United States v. Silva, 502 F. Supp. 2d 143, 149-150 (D. Mass 2007). The Court reasoned that the information from the first two searches, which the Court found to be lawful, as well as other information obtained by the police would have been sufficient to establish probable cause for a search warrant. Id. [2]

Silva was ultimately convicted of 22 of 24 counts against him and sentenced to 81 months in prison. On appeal, the First Circuit affirmed the conviction. See, United States v. Silva, 554 F.3d 13 at 18-19. While Silva brought an action to vacate his conviction under 28 U.S.C. § 2255, he did not pursue it. On April 27, 2011, the court dismissed the action.

On January 7, 2010, Silva brought this § 1983 suit against Detective Devlin, a "John Doe" shift supervisor, Hudson Police Chief Braga ("Braga"), and the Town of Hudson. The complaint seeks $5 million in compensatory damages and an additional $5 million in punitive damages. Silva alleges that Devlin instructed Norman to obtain documents from Silva's bedroom from the outset and in so doing he "knowingly, with intent and malice, conspired with

---

[2] Those sources were 1) John D'Angelo's statement that a cell phone account was opened in his name and that bills were being sent to defendant's address. (D'Angelo was the source of a prior investigation of Silva.) 2) Devlin's suspicion that the person who answered the cell phone associated with the account in D'Angelo's name was Max Silva; 3) Norman's statement that Max had talked about receiving a phone call from someone he believed to be a police officer, and that he cancelled the cell phone account the next day, 4) Norman's statement that he saw a license and cell phone bill belonging to someone else with a Marlborough address when he entered the room for the second search, 5) traffic citations and medical bills provided by Norman (presumably from the second search), and 6) the confirmation by two police officers that Max Silva had used Norman's name during traffic stops. United States v. Silva, 502 F. Supp. 2d at 149-150.

Norman Silva to violate Plaintiffs [sic] clearly astablished [sic] Constitutional rights to unreasonable searches and the right to privacy, liberty and property" (document #2, at 6).

Defendant has moved for judgment on the pleadings (document #29) arguing that the plaintiff no longer has a right to bring this claim because the statute of limitations bars his action. If Silva's cause of action accrued after his criminal case was finally resolved on April 23, 2009, Silva's claim was timely, but if his cause of action accrued after the search, as defendants claim, it was not. The pivotal question is the application of Heck v. Humphrey, 512 U.S. 477 (1994) and the answer is more complicated than initially appears.

In Heck v. Humphrey, the petitioner was convicted in state court of voluntary manslaughter for killing his wife. While serving his sentence, and before his direct appeal was resolved, the petitioner filed a § 1983 action alleging that the police investigators violated his constitutional rights by, among other things, destroying exculpatory evidence. Id. at 478-79. The Supreme Court held that a claim under § 1983, which necessarily implicates the validity of the conviction, cannot be brought unless the conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. Such a claim, the court held, could only accrue after these events had occurred.

In footnote seven of the opinion, however, the Court hypothesized concerning causes of action under § 1983 that might <u>not</u> imply the invalidity of a conviction. Id. at 487, n.7, specifically,[3] § 1983 actions arising from allegedly illegal searches. The Court wrote that

---

[3] The footnote states:

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a

-4-

because of doctrines like "independent source" and "inevitable discovery," a suit for an allegedly unreasonable search "may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's outstanding conviction" since it would not necessarily imply that the plaintiff's conviction was unlawful. Id.

The circuits are divided on the meaning of the footnote, some holding that it is a categorical exception, that illegal search claims accrue immediately at the time of the search.[4] Some have held that the accrual of a search claim depends upon the facts – to be determined on a case by case basis.

While the First Circuit has not spoken, in my judgment the best approach is case by case. Footnote seven on its face is equivocal. It suggests that there are circumstances in which a suit for an unreasonable search "may lie" because that challenge would not "necessarily imply" the invalidity of the conviction. There may well be instances in which a challenged search *does* imply the invalidity of the conviction and other instances in which it *does not*. In the first category is a situation in which the search was illegal, but the trial court found that other evidence (e.g. an unimpeachable informant not relied upon for the search but who was known to the government at the time, or a document obtained through lawful means,) would have provided

---

state criminal trial resulting in the § 1983 plaintiff's still outstanding conviction . . . Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does not encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

[4] Some may argue that the accrual date is the date the search was found to be illegal. I need not address that question since if Silva's claim accrued on either date – the date of the search or the date of the district court's decision that the search was unlawful – the suit would be time-barred.

a lawful basis for the search (an "independent source"). In that case, the illegality of the search would not preclude the possibility that the defendant would be convicted of the underlying offenses. Since the search and the conviction are not tied, the § 1983 claim would have accrued at the time of the search.[5] But of course, precisely because the conviction was independent of the search, § 1983 damages would be restricted to the bona fides of the search. See e.g. Wallace v. Kato, 549 U.S. 384 (2007) (holding that § 1983 challenges, at least as to arrests, normally are not barred by Heck,).[6] The defendant would not be in a position to argue that his conviction derived from an illegal search.[7] As the Supreme Court noted, the petitioner would have to show that the search "caused him actual, compensable injury, which . . . does not encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned)." Heck v. Humphrey, supra at 487 n. 7.

Whether Silva's § 1983 claims imply the invalidity of the conviction depends upon which search petitioner is challenging. The district court found that the information in the search warrant (the "final search') derived in part from Norman's prior entries, including the first two searches, which the Court found to be lawful, private searches for which the government was not

---

[5] Although he did not specifically decide, Judge Posner has suggested a case by case approach, citing to evolving authorities. See Crooker v. Burns, 544 F. Supp. 2d 59, 63 (D. Mass. 2008). In Crooker, the petitioner challenged a search executed by federal agents during the course of a criminal investigation, after his conviction but before sentencing. The Court deferred ruling on the application of Heck's bar to bringing § 1983 claims until the plaintiff's criminal proceeding concluded.

[6] The Court held that Wallace's § 1983 the claim for a warrantless arrest accrued on the date legal process was issued, i.e., when the state court bound Wallace over for trial. The Court relied upon the common-law principle that a false imprisonment claim based upon detention without legal process accrues when the arrestee is held. In a footnote, however, the Court addressed state search and seizure claims. While state search and seizure claims are generally not cognizable on federal habeas under Stone v. Powell, 428 U.S. 465 (1976), there are exceptions. If the petitioner can show that it did not have a full and fair opportunity to litigate the constitutional claim in state court, the claim may or may not imply the invalidity of the conviction. Heck might require dismissal 549 U.S. at 295 n. 5. The implication is clear; Fourth Amendment claims are not automatically exempt from a Heck analysis.

responsible. Only the third search, when Norman was looking for evidence of identity theft involving victims other than himself, did the Court find that he was acting as an agent of the government. But even if the fruits of the third search were not considered in the warrant affidavit, the Court found there was sufficient probable cause to justify the final search.

To the extent that Silva is challenging that *final search* (the one pursuant to a warrant), to find for the petitioner would *necessarily* require findings contrary to those of the trial court. It would require that a jury find either that the first and/or second searches *were* unlawful or that there was *not* sufficient probable cause without the third search. Either conclusion undermined the validity of Silva's conviction. While the officers may have had evidence to believe that Silva was involved in identity fraud without the fruits of warrant search (from Devlin's previous investigation), they did not have evidence to believe that evidence of that fraud would be found in Silva's room, *without Norman's efforts*. As such, Silva surely would have had to have waited until after the criminal case was over to bring this § 1983 claim.

But in that case, if Silva were challenging the warrant search, there would be another, more fundamental problem. This suit would be barred by res judicata in the light of the district court's findings, and the First Circuit's affirmance. He simply cannot relitigate the bona fides of the first two searches, or the conclusion that the warrant search was lawful even if the third search was not.

To the extent that Silva is challenging *only* the search that the district court agreed to be unlawful -- the third search -- his damages would have to be limited to that search and that search alone and not damages deriving from his conviction. But again, there would be a

fundamental problem.  His claim would be time-barred.  He would have to have filed at the time of the search, as footnote seven to Heck suggests.

In either case, Silva has no cognizable § 1983 claim and this action is **DISMISSED**.[8]

For the foregoing Reasons, Defendants' Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) (**document #29**) is **GRANTED**.

**SO ORDERED.**

**Date:   June 24, 2011**          /s/ Nancy Gertner
                                    **NANCY GERTNER, U.S.D.J.**

---

[8] While the defendants only raised the statute of limitations issue, this Court may consider a res judicata issue on its own.  As the Supreme Court noted: "This result is fully consistent with the policies underlying res judicata; it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but it is also based on the avoidance of unnecessary judicial waste." United States v. Sioux Nation of Indians et al., 448 U.S. 371, 432 (1980).